UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

  v.

        **MEMORANDUM OF LAW & ORDER**
        Criminal File No. 19-168(10) (MJD/HB)

MUSALLEH WAHEED
MUHAMMAD,

      Defendant/Petitioner.

William C. Mattessich, Assistant United States Attorney, Counsel for Plaintiff.

Musalleh Waheed Muhammad, Pro Se.

## I.   INTRODUCTION

This matter is before the Court on Petitioner Musalleh Waheed

Muhammad's Motion to Vacate under 28 U.S.C. § 2255.  (Doc. 802.)  For the

reasons addressed below, Muhammad's motion is denied.

## II.   BACKGROUND

On August 7, 2020, Muhammad pleaded guilty to Count 1 of an

Indictment charging him with conspiracy to distribute 500 grams or more of a

mixture or substance containing a detectable amount of cocaine, in violation of

21 U.S.C. § 841(a)(1), (b)(1)(B) and 846.  (Doc. 386.)  His plea agreement contained

1

a limited appeal waiver, stating that Muhammad could appeal on the basis of ineffective assistance of counsel.

On August 5, 2021, this Court sentenced Muhammad to 156 months in BOP custody with 8 years of supervised release to follow. (Doc. 726.) As part of this sentencing decision, the Court found that Muhammad is a Career Offender and was an average participant in the conspiracy. (Doc. 727 at 2-9.) This Court also sentenced Muhammad to an additional 24 months in BOP custody for violating the conditions of his supervised release from a 2012 federal conviction for conspiracy with intent to distribute controlled substances, to run consecutively to his 156-month sentence. See United States v. Musaaleh Waheed Muhammad, Case No. 0:12-cr-197(2) (PAM/JSM) at Docs. 446, 447 (D. Minn., last filing on Aug. 16, 2021).

Muhammad appealed his conviction to the United States Court of Appeals for the Eighth Circuit on the issues of whether the officer in this case unreasonably prolonged the traffic stop and whether a vehicle search lacked probable cause. The Eighth Circuit affirmed Muhammad's conviction in a written opinion. United States v. Muhammad, No. 21-2832, 2022 WL 2093857, at *1 (8th Cir. June 9, 2022).

Muhammad now brings the following § 2255 challenge, arguing that he was provided ineffective assistance of counsel when: (1) Defense Counsel failed to move for a mental health and psychological evaluation of Muhammad, (2) Defense Counsel failed to investigate Muhammad's mental health background, (3) Defense Counsel failed to provide a mental health expert to testify to Muhammad's mental health, (4) Defense Counsel failed to object to the Court's belief that the presentence investigation report ("PSR") was erroneous as related to Muhammad's intelligence, and (5) Defense Counsel failed to appeal the Court's determination on Muhammad's Career Offender status, participation status, or the Court's belief related to Muhammad's intelligence.  (Doc. 802 at 3-4.)

## III.    DISCUSSION

### A.    Legal Standard – 28 U.S.C. § 2255

28 U.S.C. § 2255 requires a prisoner to show that he has the right to be released because "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  "[I]n a

§ 2255 motion the burden of proof is on the petitioner to show that his sentence must be vacated." Cassidy v. United States, 428 F.2d 585, 587 (8th Cir. 1970).

The Eighth Circuit has explained, "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citations omitted).

A petitioner is not entitled to an evidentiary hearing on a § 2255 motion where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "[A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

### B.    Legal Standard – Ineffective Assistance of Counsel

To gain relief for ineffective assistance of counsel, Muhammad must establish both that his counsel's performance "fell below an objective standard of

reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 678–88 (1984).  The burden is on Muhammad to establish a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 687).

The Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice."  United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).  And "counsel's failure to advance a meritless argument cannot constitute ineffective assistance."  Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994).

**C.    Claims One through Three: Muhammad's Mental Health Claims**

Muhammad argues that Defense Counsel provided ineffective assistance of counsel because (1) Defense Counsel failed to move for a mental health and psychological evaluation of Muhammad, (2) Defense Counsel failed to investigate his mental health background, and (3) Defense Counsel failed to

5

provide a mental health expert to testify to Muhammad's mental health.  (Doc. 802 at 5-13.)  As these arguments overlap, the Court discusses them together.

In summary, Muhammad argues that Defense Counsel should have verified and provided evidence of Muhammad's competency during the proceedings.  (See id.)  He avers that because Defense Counsel failed to do so, his plea was not "knowing" or "intelligent." (See id.)

### 1.    Reasonableness of Attorney's Conduct

Muhammad fails to show that Defense Counsel's performance fell below an objective standard of reasonableness because the record is clear that during the proceedings Muhammad was competent.

"Due process prevents the trial and conviction of a defendant who is mentally incompetent, and requires that a hearing be held whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial."  United States v. Turner, 644 F.3d 713, 724 (8th Cir. 2011) (citing Vogt v. United States, 88 F.3d 587, 590 (8th Cir. 1996)).  A defendant is competent if he possesses a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings."  United States v. Martinez, 446 F.3d 878, 881 (8th Cir. 2006) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)

6

(per curiam); <u>Godinez v. Moran</u>, 509 U.S. 389, 398 (1993) (holding that the <u>Dusky</u>

standard for competency to stand trial applies equally to competency to plead

guilty)).

"Even if suffering from a disease, a defendant's plea is valid if the record

demonstrates that he 'understood the charges against him, was not dissatisfied

with the services rendered by his attorney, and entered his plea knowingly and

voluntarily.'" <u>United States v. Murphy</u>, 572 F.3d 563, 569 (8th Cir. 2009) (internal

citations omitted).

### a)   Muhammad's Plea

At the plea hearing, the Court questioned Muhammad on his mental state

and confirmed that Muhammad made a "knowing" and intelligent" plea.  For

example, the Court asked Muhammad if his anxiety or anxiety medication

affected his ability to think, to which Muhammad replied, "No.  I know exactly

what's going on." (Doc. 738 at 20-22.)  Muhammad also acknowledged that he

was not under the influence of any other drug or alcohol at the plea, that he was

not under the care of a doctor or nurse during that time, and that he visited a

psychologist only once during his time at Anoka County Jail.  (<u>Id.</u>)  Additionally,

Muhammad confirmed that he had a sufficient amount of time to talk to his

attorney regarding his case, to go over all the evidence that the Government had

against him, discussed defenses to the claims against him, and that he was satisfied with his attorney's performance.  (Id. at 22-23.)  After being asked these questions, Muhammad went on to establish the factual basis to his plea.  (Id. at 26-29.)  Moreover, in a colloquy at the end of the hearing, the Court confirmed Muhammad's understanding of his plea:

> THE COURT: Now, do you have any questions about what we have done here today?
>
> THE DEFENDANT: No, I don't, Your Honor.
>
> THE COURT: Can you tell me what we've done here today?
>
> THE DEFENDANT: Yes. We went over my plea agreement, stipulated my constitutional rights, and we also talked about that you could accept my plea agreement or you could deny my plea agreement. You could give me more time than what the government asked or you could give me what my lawyer asked. I will have my right to talk to you in open court. You do not do it by Zoom or video conference. You do it in person.
>
> THE COURT: And did you plead guilty to the offense?
>
> THE DEFENDANT: Yes, I did, Your Honor.
>
> THE COURT: What offense did you plead guilty to?
>
> THE DEFENDANT: To Count 1 of 500 grams of a mixture of cocaine.
>
> THE COURT: And are you, in fact, guilty of that offense?
>
> THE DEFENDANT: Yes, I am, Your Honor.

(Doc. 738 at 31-32.)

Because the record reflects that Muhammad's plea was valid because "the record demonstrates that he understood the charges against him, was not dissatisfied with the services rendered by his attorney, and entered his plea knowingly and voluntarily."  Murphy, 572 F.3d at 569.

### b)   Medical Records and 1995 IQ Test

In support of his argument, Muhammad relies on medical records that indicated he was on and off medication for depression and anxiety and a 1995 IQ test that showed that Muhammad, at the time of the test, had an IQ of 82.  (Doc. 802 at 5-13.)  Both were noted in the PSR. (See Doc. 466 ¶¶ 136, 146.) Muhammad argues that, based on this information in the PSR, a reasonable attorney should have provided confirmation of Muhammad's competency.  (Id.) This argument is unpersuasive.

As to Muhammad's depression and anxiety, the PSR also notes a psychological evaluation that reflected Muhammad's "history of symptoms of anxiety and depression with no major mental illness." (Id. ¶ 136.) (emphasis added).  Moreover, while it may be true that Muhammad took medication on and off for both depression and anxiety, Muhammad noted that he was only taking Buspar for anxiety at the time of his plea, which he stated did not affect

his thinking.  (Doc. 738 at 21.)  Additionally, when asked if he was taking any

other drugs or alcohol, Muhammad replied "No, [] absolutely not."  (Id. at 22.)

Thus, Muhammad's history of being on and off medication for anxiety and

depression fails to support his argument that his plea was not "knowing" or

"intelligent."

   As to the 1995 IQ test indicating that Muhammad had an IQ of 82, the test

only reflected his IQ at the time of the test.  (Doc. 466 ¶ 146.)  During the

sentencing, the Court believed that Muhammad was more intelligent than

reflected by this old test, in part, because of a letter that Muhammad read during

his allocution.  (Doc. 731 at 21.)  Muhammad's later argument that he had

assistance in "authoring the letter" (Doc. 810 at 6) is unavailing because he offers

no additional evidence in support of this claim.  See Brown v. United States, 656

F.2d 361, 363 (8th Cir. 1981) (to be entitled to an evidentiary hearing, a defendant

must allege facts that would entitle him to relief; mere unsupported conclusions

do not suffice).  In summary, the 1995 test does not support his contention that

he was incompetent during the proceedings of this case.  Thus, further

investigation was unwarranted.

### c)   McMullen v. Dalton

Muhammad also analogizes his case to McMullen v. Dalton, 83 F.4th 634, 647 (7th Cir. 2023).  (Doc. 811 at 2.)  However, McMullen is distinguishable from the case at hand because in McMullen, the dispute was whether defense counsel completed a reasonable enough investigation to present mitigating evidence during sentencing.  83 F.4th at 639.  Here, Muhammad challenges the Court's and Defense Counsel's belief that Muhammad was competent during the proceedings of this case.  Thus, McMullen is inapplicable.

Moreover, the record does not suggest that Defense Counsel passively believed that Muhammad was competent.  During Muhammad's plea hearing, Defense Counsel stated, ". . . I believe [Muhammad] understands fully and voluntarily wants to -- that this is the result of long, hard negotiations to allow him to accept responsibility."  (Doc. 738 at 20.)  At the sentencing hearing, the Court questioned Defense Counsel on his interactions with Muhammad:

> THE COURT: All right. So I appreciate the letter that you've written, and I will agree that what you've said that you wrote the letter, but I don't know of anybody with an 80 IQ who could write that letter, and you've been very articulate here, so I don't believe that you have an IQ of what your lawyer has told me.[1]

---

[1] At various times during the sentencing hearing, the Court stated that Defendant had an 80 or 88 IQ score on the test.  (See Doc. 731.)  These were merely

[DEFENSE COUNSEL]: Excuse me, may I.

THE COURT: You may.

[DEFENSE COUNSEL]: Your Honor, the IQ came directly out of the Presentence Report. I quoted the Presentence Report. I'm not attesting that that's correct. I'm just -- I was just repeating that was a finding in the Presentence Report.

THE COURT: How long have you been representing this gentleman?

[DEFENSE COUNSEL]: For quite some time. Since --

THE COURT: And you've talked to him?

[DEFENSE COUNSEL]: Yes.

THE COURT: And you've had conversations, and you've been practicing law for over what, 25 years?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: And you do an analysis of whether or not someone is -- has a less IQ than normal, and I'm assuming that after all the conversations that you've had over the years that you know that this gentleman is not an 88 IQ person. And so even though if it's in the – you didn't object to it, you should have objected to it because you knew that your client was more intelligent than what the probation officer had said, even though he may have tested at that. He's an intelligent young man and to argue to the Court that he was not intelligent, I take offense to that.

---

misstatements and not attempts to downplay the IQ test. In the evaluation of Muhammed's current motion, the Court has considered an IQ score of 82.

[DEFENSE COUNSEL]: I apologize, Your Honor.  That wasn't my intention.  I was trying to, when I brought that up, I was just trying to give his personal characteristics and background from the time he was in school and requiring and receiving special education services.

THE COURT: Well, he may have received all of that but he's – you've been with him, and I hope you spent quite a bit of time with him and understand him and you've represented him quite well, but you know that he doesn't have an 88 IQ, would you agree with that?

[DEFENSE COUNSEL]: To be very candid with the Court, I don't even know what an 80 or 88 IQ translates to.  I'm not an educational person.  In my opinion, from my interactions with Mr. Muhammad, I've been quite impressed with him.  And when he wrote this letter, although, I did not have an opportunity to review it before he read it to the Court, I'm very impressed with this.  Throughout my time of representing Mr. Muhammad, I've seen him evolve. I think when I first met him, I think he was perhaps experiencing certain withdrawals from use of mood altering chemicals. He went through a period of very high anxiety. He went through a period --

THE COURT: Well, counsel?

[DEFENSE COUNSEL]: I'm sorry?

THE COURT: You don't want me to cross examine you. How long have you been practicing law?

[DEFENSE COUNSEL]: Over 30 years.

THE COURT: And you've represented people that have low IQs?

[DEFENSE COUNSEL]: I have, yes.

THE COURT: And you know how they operate and articulate what they're saying?

[DEFENSE COUNSEL]: That is correct.

THE COURT: All right. And you've represented people that are extremely bright, would that be accurate?

[DEFENSE COUNSEL]: I think so, yes, Your Honor.

THE COURT: And in fact you are extremely bright.

[DEFENSE COUNSEL]: Thank you, Your Honor.

THE COURT: And so as an experienced lawyer, you would know whether or not your client is not functioning at a normal level, wouldn't that be accurate? Because you would want to know that, because you would want him tested and you would want to tell the Court that?

[DEFENSE COUNSEL]: That's correct, Your Honor.

(Doc. 731 at 24-27).

The record reflects that Defense Counsel believed Muhammad was competent because of his interactions with Muhammad and Defense Counsel's experience as a lawyer. Because of this, Defense Counsel was not required to further inquire into Muhammad's competency. Rompilla v. Beard, 545 U.S. 374, 383 (2005) ("duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw

14

a line when they have good reason to think further investigation would be a waste."); <u>Wiggins v. Smith</u>, 539 U.S. 510, 525 (2003) (further investigation excusable where counsel has evidence suggesting it would be fruitless).  Defense Counsel's conduct therefore fell within the range of reasonable professional assistance.

Furthermore, Muhammad does not point to any other evidence outside the record that required further inquiry into his competency and provides nothing to suggest that Defense Counsel should have been aware that Muhammad was incompetent prior to the plea or during the plea other than mere conclusory statements.  Accordingly, an evidentiary hearing on this matter is unwarranted.

### 2.    Prejudice

Even presuming that Muhammad could establish that Defense Counsel's performance was objectively unreasonable, Muhammad fails to establish that he was prejudice by it because the Court independently determined that Muhammad's plea was knowing, voluntary, and intelligent.  (Doc. 738 at 25.)

This finding is supported by Muhammad's conduct at the change-of-plea hearing where, after having been placed under oath, declared that he understood the proceedings, that he was satisfied with his lawyer, and that he had committed the acts constituting the elements of the crimes alleged in the

indictment.  (Id. at 11-30); see also Martinez, 446 F.3d at 881 (in determining a

defendant's competency, the "district court may consider 'numerous factors,

including . . . the court's observation of the defendant's demeanor.'" (internal

citations omitted)).  During his sentencing, the Court also considered the

materials within the PSR, including Muhammad's history with depression and

anxiety and the 1995 IQ test, and concluded that Muhammad was competent.

Importantly, the Court noted that it did not believe that Muhammad was below

average intelligence.  (Doc. 731 at 24-27.)

Nothing from the plea, the sentencing record, or any additional evidence

submitted with this motion indicates that Muhammad was incompetent.

Therefore, Muhammad was not prejudice by Defense Counsel's alleged failure to

further investigate Muhammad's mental health.  See Godinez, 509 U.S. at 401

n.13 (in any criminal case, a competency determination is necessary only when a

court has reason to doubt the defendant's competence) (internal citations

omitted).

Accordingly, Defense Counsel did not provide ineffective assistance of

counsel when he did not move for a mental health and psychological evaluation

of Muhammad, investigate further into Muhammad's mental health background,

or fail to provide a mental health expert to testify at sentencing as to

Muhammad's mental health.  As such, Muhammad's first three claims for § 2255

relief fail.

### D.    Claim Four: Lack of Objection to the Court's Belief that the Presentence Report was Erroneous.

Next, Muhammad alleges that he was provided ineffective assistance of

counsel when Defense Counsel failed to object to the Court's belief that the PSR

was erroneous regarding Muhammad's intelligence.  (Doc. 802 at 13.)

Even presuming Defense Counsel's lack of objection meant that he

provided deficient counsel, Muhammad fails to show any prejudice because he

does not present any evidence or argument that there is "a reasonable

probability" that an objection to this finding would "undermine confidence in

the outcome." Strickland, 466 U.S. at 694.  As such, Muhammad's fourth claim

for relief is denied.

### E.    Claim Five: Arguments on Appeal

Muhammad argues that Defense Counsel provided ineffective assistance

of counsel when he did not appeal Muhammad's Career Offender status,

participation status, or the Court's belief regarding Muhammad's intelligence.

(Doc. 802 at 4, 22-24.)

"To establish ineffective assistance of appellate counsel, [defendant] must show that counsel's performance was deficient, and prejudice from that deficiency.  The deficient performance standard is rigorous."  <u>United States v. Brown</u>, 528 F.3d 1030, 1032-33 (8th Cir. 2008).  "When [ ] counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims."  <u>Link v. Luebbers</u>, 469 F.3d 1197, 1205 (8th Cir. 2006) (citations omitted).

"[C]ounsel will not be held to be ineffective for failure to raise every conceivable issue."  <u>Id.</u>  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal."  <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983).  In the absence of contrary evidence, the Court must "assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy."  <u>Roe v. Delo</u>, 160 F.3d 416, 418 (8th Cir. 1998) (quotation omitted).

### 1.    Reasonableness of Attorney's Conduct

In Muhammad's plea agreement, Muhammad waived his right to appeal his sentence if the Court imposed a sentence at or below 188 months' imprisonment.  (Doc. 386 ¶ 8.)  The only exception to this waiver was

Muhammad's right to challenge whether the officer in this case unreasonably prolonged the traffic stop and whether the search of the vehicle in this case lacked probable cause. (Id. ¶ 3.) The Court imposed a sentence of a 156-months.

On appeal, only arguments exempted by the waiver were made. Other than a conversation where Muhammad told Defense Counsel to appeal the Career Offender status and participation status determinations (Doc. 802 at 22-23), Muhammad does not present any evidence that this was not a strategic decision by Defense Counsel. Accordingly, the Court must "assume that [Defense Counsel's] failure to raise a claim was an exercise of sound appellate strategy." Roe, 160 F.3d at 418.

### 2. Prejudice

Even if Muhammad could show that Defense Counsel was ineffective by failing to appeal decisions in this case, Muhammad fails to show it would have affected the outcome of his case because the Court sentenced Muhammad below the guideline range. The Court also stated that it would have imposed a 156-month sentence regardless of the career offender and role enhancement decision. (Doc. 731 at 33.) Moreover, for the reasons provided above, Muhammad fails to show that appealing the Court's finding on his intelligence would "undermine confidence in the outcome" of his sentence. Strickland, 466 U.S. at 694.

Consequently, Muhammad's fifth claim for relief is also denied.

**F.      Certificate of Appealability**

Under <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), in resolving

a § 2255 motion, the Court must issue a certificate of appealability on both its

procedural and substantive rulings, unless it makes certain findings.  For its

decisions on the merits, to deny a certificate of appealability, the Court must find

that no "reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." <u>Id.</u>  With regard to the Court's

decision on the merits, it concludes that no "reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." <u>Id.</u>

Therefore, the Court denies a Certificate of Appealability in this case.

**IV.    ORDER**

Based on the foregoing reasons, as well as the files, records, and

proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Petitioner Musalleh Waheed Muhammad's Pro Se Motion to
Vacate under 28 U.S.C. § 2255 **[Doc. 802]** is **DENIED**; and

2.      No Certificate of Appealability is issued.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 2, 2024                    s/Michael J. Davis
                                        Michael J. Davis
                                        United States District Court